MORRIS COHEN *vs.* LUCILLE M. DAVIES.

Norfolk. December 5, 1939. — January 31, 1940.

Present: FIELD, C.J., DONAHUE, LUMMUS, COX, & RONAN, JJ.

*Landlord and Tenant,* Landlord's liability to tenant, Common courtyard. *Negligence,* Invited person. *Wilful, Wanton or Reckless Misconduct.*

Evidence, merely that the owner of an apartment house surrounding a lawn, containing concrete walks obviously intended for use by the tenants in going to and from the street, knew that a tenant had crossed the grass instead of using the walks to get to the street, would not have warranted a finding of an invitation to the tenant to continue to do so.

In placing low, visible wire guards at various places bordering concrete walks in a courtyard of an apartment house in order to prevent a tenant from crossing the lawn, which he was not invited to use, the landlord was not guilty of creating a trap or of wilful, wanton and reckless conduct toward the tenant.

TORT. Writ in the Superior Court dated November 16, 1936.

A verdict for the defendant was ordered by *Donahue*, J.

The case was submitted on briefs.

*H. A. Carney,* for the plaintiff.

*F. G. Katzmann & M. J. Dray,* for the defendant.

Cox, J. The plaintiff, at the time of his injuries, had been a tenant of the defendant for about two years, occupying the last lower apartment on the right at the end of a courtyard on Longwood Avenue, Brookline. The jury could have found that on the evening of May 9, 1936, between nine and nine-thirty, he left his apartment by the outer door leading to the courtyard for the purpose of getting a prescription filled, descended the front steps and went diagonally to his left across the lawn as he had done a number of times before "to the end of the grass there," where he fell over a piece of wire fencing or netting, which

was about eighteen inches above the ground. The first time he ever saw the fencing was just after he fell. The courtyard is shown in the photographs that were in evidence. On either side of it there are substantial brick apartments. Opposite the door leading to the plaintiff's apartment is a door in the building on the other side of the court, with a concrete walk connecting the steps in front of these doors. In the center of the courtyard this walk is joined by a concrete walk that extends at right angles with it through the courtyard to the street. There is another transverse concrete walk nearer the street that connects other opposite entrances to the same buildings. About midway between these two transverse walks, and along the main walk, there is a circular area in which two small trees are planted and completely around which the walk extends on its way out to the street. The plaintiff fell near the point where the walk to the street curves to the left on its way around the circular area. The course that he took when he left the steps was substantially along the hypotenuse of a triangle, the rectangular sides of which were formed by the transverse and intersecting walks. As he came out of the door, he could see the steps as he walked down and also the white concrete walk in front of him, but instead of keeping on this walk he "just cut across the grass." It could have been found that he did not see anything as he walked across. He had never been forbidden to cross the grass. There was evidence that, after the injury, the defendant said, in effect, that she had put up the fencing to break the plaintiff and one Nelson of their habit of crossing the lawn. The fencing did not extend along the entire border of the walks, but consisted of short pieces set in the lawn at the corners made by the intersection of the walks and also at the point where the plaintiff fell. The record did not disclose how long these pieces had been in place. From a photograph, it is plain that the pieces of fencing on the plaintiff's side of the main walk were not the only ones that were installed. The fencing or netting consists of pieces of wire, similar to croquet wickets, which overlap and are held together by three

bands of transverse wire. To install it, all that appears to be necessary is to push the several points of the wickets into the ground. A photograph, taken a few days after the alleged injury, shows the lawns, which appear to be well kept, and plantings of shrubs along the sides of the buildings, at the entrances and in front of the substantial brick wall that extends between the two buildings at the rear end of the courtyard.

The bill of exceptions, although seasonably filed, was dismissed under Rule 74 of the Superior Court (1932), and the trial judge reported the case to this court with the stipulation that, if he was in error in directing a verdict for the defendant, the case is to be remanded for trial, otherwise judgment is to be entered on the verdict as ordered.

It is the rule, with some qualifications immaterial to this case, that a landlord is bound to keep the areas intended to be used in common by his tenants in reasonably safe condition for the use contemplated. He is not bound, however, to keep them safe for uses to which they were not meant to be put. *Cerricola* v. *Darena*, 266 Mass. 267, 269, and cases cited. Although the plaintiff was a tenant of the defendant, his status at the time of his alleged injury is important in determining the rights and liabilities of the parties, inasmuch as a tenant, in his use of certain parts of the landlord's premises, may be an invitee, trespasser or a mere licensee. See *Noonan* v. *O'Hearn*, 216 Mass. 583; *Landers* v. *Brooks*, 258 Mass. 1; *Lally* v. *A. W. Perry, Inc.* 277 Mass. 463. The record in the case at bar in this respect discloses the bare facts of the tenancy, that the plaintiff had crossed the lawn "a number of times before," and the appearance of the premises as shown by the photographs. It could not have been found that the plaintiff was crossing the lawn as an invitee, although it could have been found that the defendant knew that he had crossed. Knowledge of such use does not amount to an invitation, and the mere passive acquiescence in the use to which this portion of the premises was put was not equivalent to an inducement or invitation to use in that way. *Dickie* v. *Davis*,

217 Mass. 25, 29. *Murphy* v. *Boston & Maine Railroad,*
248 Mass. 78, 81. In *Walker* v. *Winstanley,* 155 Mass. 301,
the plaintiff went upon the defendant's premises for the
purpose of taking orders for wood. It was assumed in his
favor that he was within the scope of any invitation to
the public having lawful business at the defendant's house,
and also that the defendant had control of the premises.
The court said, at pages 302–303: "But an invitation only
implied by the situation and look of the premises must be
confined within somewhat definite limits. When the plain-
tiff went along the side of the defendant's house, and fell
down the cellar stairs, nothing said to him that the line he
selected was appropriated to travel any more than the rest
of the yard or open space between that and the next house.
. . . If, then, we assume that the plaintiff was warranted
in being where he was, in so far that he was a licensee and
not a trespasser, still we think it impossible to extend the
principle of invitation so as to cover the whole yard, irre-
spective of pathways, necessary lines of travel, or anything
on the surface which promised security." See *Mistler* v.
*O'Grady,* 132 Mass. 139; *Morong* v. *Spofford,* 218 Mass.
50; *Graham* v. *Pocasset Manuf. Co.* 220 Mass. 195, 196.
The plaintiff in the case at bar was not required to cross
the lawn. Clearly defined walks obviously designed for
purposes of travel were there for his use. See *Mazey* v.
*Loveland,* 133 Minn. 210; *Offutt* v. *O'Leary,* 204 Ky. 726;
*Seel* v. *New York,* 179 App. Div. (N. Y.) 659; *Barry* v.
*Calvary Cemetery Association,* 211 Mo. 105. Compare *Fer-
dinando* v. *Rosenthal,* 169 Misc. (N. Y.) 953. The case
is not one where the plaintiff, rightfully using a passage-
way or walk intended for that purpose, is injured by some
obstruction in, upon or near it. See *Riley* v. *Lissner,* 160
Mass. 330; *O'Neil* v. *National Oil Co.* 231 Mass. 20; *Hene-
bury* v. *Cabot,* 288 Mass. 349; *Rudomen* v. *Green,* 299 Mass.
485.

At most, the duty owed the plaintiff by the defendant
in the circumstances disclosed was to refrain from wilful,
wanton and reckless conduct. *Coulombe* v. *Horne Coal Co.*
275 Mass. 226, 230. "The alleged wrongdoer acts wantonly,

wilfully or recklessly only when he inflicts the injury intentionally, or is so utterly indifferent to the rights of others that he acts as if such rights did not exist. The result is a wilful and not a negligent wrong." *Isaacson* v. *Boston, Worcester & New York Street Railway*, 278 Mass. 378, 387. "The complete indifference to consequences distinguishes wrongs caused by wantonness and recklessness from torts arising from negligence . . . ." *Freeman* v. *United Fruit Co.* 223 Mass. 300, 302. *Bellenger* v. *Monahan*, 282 Mass. 523, 528. We think that the defendant was within her rights on this record in setting up the pieces of wire fencing as she did. It does not appear that there would be any danger resulting from their position to one properly using the designated walks. *Mead* v. *Strauss*, 202 Mass. 399. See *Noyes* v. *Carr*, 228 Mass. 339. The fencing was of a type that is commonly seen along walks, beds and borders. It is true that the buildings on either side of the court were dwelling houses and were to be occupied as such. But we do not think it follows that it was intended that the lawn in the courtyard was to be kept safe for purposes of travel by tenants in order to reach the public street. See *Eisenhauer* v. *Ceppi*, 238 Mass. 458, 460, 461; *Mazey* v. *Loveland*, 133 Minn. 210. We are of opinion that the avowed purpose of the defendant in setting up the fencing to break the plaintiff and Nelson of the habit of crossing the lawn does not make her act wilful and wanton. It does not appear how long the pieces of fencing had been in position. There is nothing to show that the plaintiff ever crossed the lawn at night or at any other time when, as he testified, he "couldn't see a blessed thing." In *Reardon* v. *Thompson*, 149 Mass. 267, it was said, at page 268, that a licensee goes upon land at his own risk, and must take the premises as he finds them. "An, open hole, which is not concealed otherwise than by the darkness of night, is a danger which a licensee must avoid at his peril."

We do not think that the installation of the pieces of fence constituted a "trap," as is contended by the plaintiff. Except for the darkness, everything was open and visible. See *Bolch* v. *Smith*, 7 H. & N. 736, 747. For all that

appears, the plaintiff was using the lawn for his own convenience and not from motives to which any act or sign of the defendant contributed, and not in accordance with the intention and design for which the premises were adapted and prepared or allowed to be used. *Sweeny* v. *Old Colony & Newport Railroad,* 10 Allen, 368, 373–374.

The case at bar is distinguishable on its facts from *Riley* v. *Lissner,* 160 Mass. 330, *Palmer* v. *Gordon,* 173 Mass. 410, *Galli* v. *Drapeau,* 216 Mass. 144, *Boutlier* v. *Malden,* 226 Mass. 479, *Sughrue* v. *Booth,* 231 Mass. 538, *Brosnan* v. *Gage,* 240 Mass. 113, *Rice* v. *Rosenberg,* 266 Mass. 520, *Harrington* v. *Alessi,* 269 Mass. 433, and *Rudomen* v. *Green,* 299 Mass. 485.

In accordance with the terms of the report judgment is to be entered for the defendant.

*So ordered.*