# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

ALLEN E. HASTY and wife,         )
JUDY DARLENE HASTY,              )
                                 )
    Plaintiff/Appellee,          ) **Rutherford Circuit  No. 31613**
                                 )
VS.                              ) **Appeal No. 01A01-9709-CV-00531**
                                 )
THOMAS R. THRONEBERRY, Ind.      )
and d/b/a THRONEBERRY            )
PROPERTIES and SHARON            )
CLUTTER,                         )
                                 )
    Defendant/Appellant.         )

**FILED**

December 2, 1998

Cecil W. Crowson
Appellate Court Clerk

APPEAL FROM THE CIRCUIT COURT OF RUTHERFORD COUNTY
AT MURFREESBORO, TENNESSEE
THE HONORABLE ROBERT E. CORLEW, JUDGE

**L. GILBERT ANGLIN**
Murfreesboro, Tennessee
Attorney for Appellant


**LARRY D. BRANDON**
Murfreesboro, Tennessee
Attorney for Appellee

**AFFIRMED**

                             **ALAN E. HIGHERS, J.**


**CONCUR:**

**W. FRANK CRAWFORD, P.J., W.S.**

**DAVID R. FARMER, J.**

Defendant Thomas R. Throneberry appeals the trial court's judgment in the amount of $6,000 entered in favor of Plaintiff/Appellee Allen E. Hasty after a jury trial. For the reasons hereinafter stated, we affirm the trial court's judgment.

A transcript of the evidence at trial does not appear in the record on appeal; however, the record does contain a Statement of the Evidence which was filed by Throneberry and later approved by the trial court. See T.R.A.P. 24(c). Although the evidence contained therein is sparse, the Statement of the Evidence reveals that Hasty was a maintenance worker employed by Throneberry. As compensation, Hasty received $220 per week in salary plus the use of an apartment in Murfreesboro. In March 1992, Hasty was involved in an automobile accident while operating a truck owned by his employer, Throneberry. Thereafter, a dispute arose between the parties as to whether Hasty had permission to drive the truck at the time of the accident. As a result of this dispute, Throneberry fired Hasty on March 23, 1992.

On March 24, 1992, Throneberry verbally notified Hasty that he would have to move from the apartment because he no longer worked for Throneberry. Five days later, on March 29, 1992, Throneberry caused a written notice to be placed on the door of the apartment directing Hasty to vacate the apartment by 12:00 midnight of the following day. On March 30, 1992, Throneberry notified Hasty that the electric bills for the apartment remained unpaid and that Throneberry would cause the utilities to be turned off if Hasty did not pay them by 1:00 p.m. that day. The utilities for the apartment were in Throneberry's name. The next day, April 1, 1992, Throneberry caused the electricity to the apartment to be turned off. As a result, Hasty was forced to stay in a hotel. On April 6, 1992, Throneberry changed the locks on the apartment, thereby preventing Hasty from gaining access to the apartment. Another employee of Throneberry later gave Hasty permission to enter the apartment to retrieve his personal belongings.

Hasty subsequently was treated by an orthopedic surgeon for pain in his right shoulder. Hasty also complained of chronic headaches and was referred to a neurologist. The neurologist diagnosed Hasty as having post-traumatic headaches, and he, in turn, referred Hasty to a psychiatrist for further treatment. The psychiatrist, Dr. Ravi Singh, treated Hasty for major depression and Post-

2

Traumatic Stress Disorder (PTSD). Dr. Singh concluded that these injuries were caused by a combination of factors, including the March 1992 automobile accident, Hasty's loss of employment, and Hasty's ouster from his apartment by Throneberry's actions of having the electricity turned off and locking Hasty out of the apartment. Symptoms of Hasty's PTSD included daily panic attacks and headaches.

As a result of his injuries, Hasty filed this action against Throneberry in March 1993.[1] In essence, the allegations of Hasty's complaint asserted claims for defamation, outrageous conduct, and wrongful eviction. The complaint specifically alleged that, by his actions, Throneberry willfully, maliciously, and intentionally caused physical, emotional, and economic harm to Hasty.

Throneberry filed a motion for summary judgment contending, inter alia, that Hasty could not maintain an action for wrongful eviction against him because the parties' relationship was that of employer-employee rather than landlord-tenant. The trial court denied Throneberry's motion as to Hasty's wrongful eviction claim, but the court granted the motion as to the claims for defamation and outrageous conduct and, accordingly, dismissed these claims.

Pending these proceedings, Hasty pursued a workers' compensation claim for the injuries that he suffered as a result of the March 1992 automobile accident. Hasty's claimed injuries included depression and PTSD. Throneberry and his workers' compensation insurance carrier denied that Hasty's injuries were caused by the March 1992 automobile accident, but they agreed to settle Hasty's claim for the sum of $30,000. The amended settlement order entered in January 1996 indicated that Hasty's psychiatrist, Dr. Ravi Singh, believed "many factors contributed to [Hasty's] depression and [PTSD]."

Before the trial on the wrongful eviction claim, Throneberry filed two motions in limine in which he asked the trial court to exclude certain testimony of Dr. Ravi Singh concerning Hasty's depression and PTSD. As grounds for these motions, Throneberry contended that (1) Hasty already had recovered workers' compensation benefits for his alleged injuries and, thus, the exclusivity

---

[1] Hasty's wife also was a plaintiff, but the trial court's judgment did not award her any damages and she is not a party to this appeal.

provisions of the Workers' Compensation Law precluded him from recovering for his injuries in this action, and (2) Dr. Singh's testimony did not establish within a reasonable degree of medical certainty that Hasty's injuries were caused by Throneberry's actions. Throneberry also moved to amend his answer to assert the Workers' Compensation Law as an additional defense. The trial court subsequently denied Throneberry's motions in limine and permitted the majority of Dr. Singh's deposition testimony to be read to the jury. The record does not reveal that the trial court ever ruled on Throneberry's motion to amend his answer.

At trial, Throneberry renewed his motions in limine to exclude Dr. Singh's testimony relating to Hasty's PTSD. The trial court agreed that Hasty could not recover for that portion of his PTSD caused by his work-related injury, but the court ruled that it would be a jury issue as to what portion of Hasty's injury was caused by his work-related injury and what portion was caused by Throneberry's conduct in the present case.

The trial court also permitted Hasty to amend his pleadings to conform to the evidence by asserting a claim for intentional infliction of emotional distress. At the trial's conclusion, the jury returned a verdict finding that Throneberry acted wrongfully in locking Hasty out of his apartment and/or in terminating his electric service and, further, that Hasty's injuries were caused by Throneberry's actions. The jury found that Hasty was entitled to $500 in damages for the loss of his personal property and $10,000 for his mental, emotional, and psychological damages. The jury determined that fifty-five percent (55%) of these latter damages were caused by Throneberry's actions in the present case.

In accordance with the jury's verdict, the trial court entered a judgment awarding Hasty damages in the amount of $6,000. Throneberry filed a motion for new trial in which he raised the same arguments that he had raised in his pre-trial motions. The trial court denied the motion, and this appeal followed.

Throneberry first contends, on the authority of Crooms v. Reichman, 8 Tenn. Civ. App. 87 (1918), that he and Hasty had an employer-employee relationship rather than a landlord-tenant

relationship and, thus, that Hasty could not maintain an action against him for wrongful eviction. In Crooms, the court held that, when an employee occupies his employer's premises as an incident to his employment, this circumstance does not transform the employee into a tenant of his employer. Crooms, 8 Tenn. Civ. App. at 90. Instead, the parties' relationship remains that of employer-employee. In the event of his discharge from employment, the employee becomes a trespasser, and the employer, as the owner of the premises, has the right to enter the premises and to remove the employee's possessions therefrom. Id.

Contrary to Throneberry's suggestion, the court's holding in Crooms did not preclude Hasty from maintaining an action against Throneberry based on the latter's allegedly wrongful conduct in ousting Hasty from the premises. Although the court in Crooms followed the rule that the discharged employee was a trespasser without the rights of a tenant, the court also recognized that the employer's right to remove the employee and his belongings from the premises was not without limitations. The court explained:

> [W]e proceed to lay down the following as our conception of the measure of duty or care upon the part of a landowner who rightfully enters to remove the goods of a trespasser, . . . . Expressed in familiar terms extracted from our numerous decisions, the duty owing the occupant and trespasser is that of seeing that he suffer no injury or loss as the result of intentional, willful or wanton conduct. It is wholly illogical to say that the landlord in such case must enter upon his premises with due care and solicitude for the property of the discharged tenant, in view of a proposition of unassailable soundness that the trespasser at the moment is challenging the right of the enterer and necessarily provoking anger and counter force. Hence the imperativeness of laying down the rule that the landlord in such case is not chargeable with what might be deemed reasonable and ordinary care implied and observed in ordinary social and legal relations, but that he must simply refrain from doing or inflicting unnecessary, or willful or wanton injury to the goods of the occupant.
>
> That the landlord must refrain from deliberately destroying the goods of his tenant and must do no unnecessary act resulting in their destruction, nor pursue a course of such recklessness of consequences as to amount to willfulness is a proposition which must be accepted for the well-known reason that the law does not tolerate revenge nor acquiesce in the infliction of punishment upon a party who has been guilty of wrongdoing. There is no forfeiture of goods and rights because of such conduct; hence the goods must not be recklessly or wantonly broken up and, booted about nor shamelessly or unnecessarily exposed to hazards.

Crooms, 8 Tenn. Civ. App. at 92-93.

5

In accordance with Crooms, Throneberry had a duty to refrain from any intentional, willful, or wanton conduct which would cause injury or loss to Hasty. In a more recent opinion, our supreme court has reaffirmed the existence of such a duty, holding that:

> The owner of realty owes to a trespasser the duty not to injure him wilfully, maliciously or intentionally. [Citations omitted].
>
> "One acts wantonly within the rule that a property owner owes to a trespasser only the duty to refrain from wilful, wanton and reckless conduct, when he inflicts injury intentionally or acts with complete indifference to consequences."

Yarbrough v. Potter, 207 S.W.2d 588, 589 (Tenn. 1948) (citing Cohen v. Davies, 25 N.E.2d 223 (Mass. 1940)).

In his amended complaint, Hasty alleged that Throneberry acted intentionally, willfully, and maliciously in causing the electricity in Hasty's apartment to be terminated and in changing the locks on the apartment so that Hasty could not enter the apartment to retrieve his personal belongings. Hasty further alleged that, in taking these actions, Throneberry intentionally, willfully, and maliciously intended to cause harm to Hasty and his family. In light of these pleadings, we conclude that the trial court correctly refused to dismiss Hasty's complaint on the basis of Crooms. Even if Crooms precluded Hasty from maintaining a wrongful eviction action against Throneberry, Hasty's amended complaint contained sufficient allegations to state a cause of action under the alternate theory of recovery set forth in Crooms, i.e. that, in ousting Hasty from the premises, Throneberry engaged in intentional, willful, or wanton conduct such as to cause injury or loss to Hasty. The jury's verdict further supported this theory because the jury found that Throneberry wrongfully caused $500 in damages to Hasty's property.

We note that Throneberry's appeal fails to challenge the merits of Hasty's claim under this alternate theory of recovery. Moreover, even if the court's holding in Crooms prevented Hasty from maintaining an action for wrongful eviction, it did not prevent him from maintaining an action for intentional infliction of emotional distress. As previously indicated, the trial court allowed Hasty to amend his pleadings to assert such a claim, and Throneberry does not appeal this aspect of the trial court's ruling. In the absence of the relevant portions of the transcript or a copy of the trial court's charge to the jury, we must presume that the court fully and correctly charged the jury on the parties'

6

respective theories of the case and on the applicable law. Bennett v. Sanders, 685 S.W.2d 1, 2 (Tenn. App. 1984); Pickard v. Ferrell, 325 S.W.2d 288, 293 (Tenn. App. 1959).

Throneberry also contends that the trial court erred in permitting Hasty to present proof that he suffered from PTSD because (1) Hasty previously recovered for this injury in a workers' compensation proceeding and (2) the evidence failed to establish within a reasonable degree of medical certainty that Hasty's injury was caused by Throneberry's allegedly tortious conduct.

Throneberry's first objection to this evidence is based on the exclusivity provisions of the Workers' Compensation Law. As pertinent, that law provides that:

> The rights and remedies herein granted to an employee subject to the Workers' Compensation Law on account of personal injury or death by accident, including a minor whether lawfully or unlawfully employed, shall exclude all other rights and remedies of such employee, . . . at common law or otherwise, on account of such injury or death.

T.C.A. § 50-6-108(a) (1991). In interpreting this provision, our supreme court has held that, "in the field of workmen's compensation law, and in suits by a worker against his employer, the initial injury is the cause of all that follows, even where there is superimposed upon the original injury, a new, or additional or independent injury during the course of treatment, negligent or otherwise." McAlister v. Methodist Hosp., 550 S.W.2d 240, 245 (Tenn. 1977). In McAlister, a hospital employee suffered an on-the-job injury to her back. McAlister, 550 S.W.2d at 241. The employee received treatment for her injury from the hospital which employed her. Contending that the hospital's treatment was negligent, the employee thereafter brought a malpractice action against the hospital. Id. The supreme court dismissed the action, however, holding that the Workers' Compensation Law provided the employee's exclusive remedy. Id. at 245.

The supreme court's holding in McAlister arguably would preclude claims such as those brought in the present case. Hasty's initial injury was caused by an on-the-job automobile accident for which he received workers' compensation benefits. Hasty's injury later was aggravated by the allegedly tortious conduct of Throneberry. Thus, the facts of this case are analogous to those found

7

in McAlister, where the employee's on-the-job injury was aggravated by her employer's subsequent negligence.

Nevertheless, we conclude that the supreme court's holding in McAlister did not prevent Hasty from recovering for his additional injuries in this case. We do not view the supreme court's McAlister decision as overruling another line of case precedent which holds that the exclusivity provisions of the Workers' Compensation Law do not apply if the plaintiff alleges and proves that the defendant intended to cause his injury. Cooper v. Queen, 586 S.W.2d 830, 833 (Tenn. App. 1979). In the present case, Hasty's complaint specifically alleged that, by his tortious conduct, Throneberry intended to cause harm to Hasty. If proven, these allegations were sufficient to support a common-law action for damages against Throneberry. Blair v. Allied Maintenance Corp., 756 S.W.2d 267, 270-71 (Tenn. App. 1988).

As an aside, we question whether the evidence presented supported Hasty's claim for intentional infliction of emotional distress. We note that this was essentially the same claim that was dismissed by the trial court prior to trial. "Intentional infliction of emotional distress and outrageous conduct are not two separate torts, but are simply different names for the same cause of action." Bain v. Wells, 936 S.W.2d 618, 622 n.3 (Tenn. 1997). On appeal, however, Throneberry has not challenged the sufficiency of the evidence to support this claim, and, thus, we need not further address the issue.

As his second basis for objecting to the evidence of PTSD, Throneberry contends that the testimony of Hasty's medical expert, Dr. Ravi Singh, was insufficient to show that Hasty's injury was proximately caused by Throneberry's conduct. See Porter v. Green, 745 S.W.2d 874, 877 (Tenn. App. 1987) (holding that, where physician testifies concerning plaintiff's injury, physician's opinion must be reasonably certain as to cause of injury). In support of this argument, Throneberry points to testimony where Dr. Singh lists the causes of Hasty's PTSD, such as Hasty's automobile accident, being fired from his job, and his loss of income, but fails to mention the tortious conduct allegedly committed by Throneberry in the present case.

8

We conclude that this argument is without merit.  On one occasion, Dr. Singh did fail to specify the tortious conduct involved in the present case as being the cause of Hasty's injury; however, the remainder of Dr. Singh's testimony is replete with instances where Dr. Singh adequately described the pertinent conduct:

> Q.      . . . Would you tell me the psychological trauma that you believe stimulated his condition?
>
> A.      The psychological trauma is that he lost his job, and he had no income.  He was locked out of his apartment; his lights were cut off.
>
> . . . .
>
> Q.      All these factors that we've discussed in your deposition are contributing factors in the impairment rating that you've given?
>
> A.      According to the history of Mr. Hasty, yes, sir.
>
> Q.      Doctor, is it your opinion based upon a reasonable degree of medical certainty that there is a causal connection between those factors that he related to you in his history and his permanent impairment?
>
> A.      According to Mr. Hasty's history, that's what has caused his impairment, caused his condition, depression.
>
> . . . .
>
> Q.      Is it a fair statement, Dr. Singh, that not one particular event caused the depression and post-traumatic stress disorder, but a combination of events?
>
> A.      Historically, what I see in Mr. Hasty's history, everything started after March of '92, whenever he had the accident and lost the job.
> . . . .
>
> Q.      He told you that his lights were cut off?
>
> A.      Yes, sir.
>
> Q.      Is that a contributor or a stressor to both diagnoses?
>
> A.      Yes, sir.
>
> . . . .
>
> Q.      Dr. Singh, the stressors that I've asked you about, did they occur over a period of time?
>
> A.      Yes, they occurred over a period of time.
>
> . . . .

9

Q. The lights being turned of?

A. The lights being turned off and being locked out of the apartment.

Q. And that goes back to the question I asked you. We're not talking about one causal factor that caused --

A. These are cumulative factors. One thing happened that then --

Q. Are you saying these are cumulative factors, that combined --

A. Combined; right.

Q. -- caused the two conditions that you've testified to?

A. Yes, sir.


Throneberry additionally criticizes Dr. Singh's testimony because Dr. Singh was unable to state what percentages of Hasty's PTSD and depression were caused by the tortious conduct alleged in the present action. We do not view this failure as being fatal to Hasty's claim for damages. With the adoption of comparative fault principles in this state, juries often are asked to apportion fault where two successive torts result in one indivisible injury. See, e.g., Gray v. Ford Motor Co., 914 S.W.2d 464, 467 (Tenn. 1996). Such a determination is "a matter peculiarly within the province of the jury," and we decline to disturb the jury's apportionment of liability in this case. Turner v. Jordan, 957 S.W.2d 815, 824 (Tenn. 1997) (quoting Rowlands v. Signal Constr. Co., 549 So. 2d 1380, 1383 (Fla. 1989)).


The judgment of the trial court is hereby affirmed. Costs of this appeal are taxed to Throneberry, for which execution may issue if necessary.


_____
HIGHERS, J.


CONCUR:


_____
CRAWFORD, P.J., W.S.

FARMER, J.