Benson *vs.* Baltimore Traction Company.

(Decided 20th June, 1893.)

---

HARRY BENSON, by his father and next friend, HENRY BENSON *vs.* THE BALTIMORE TRACTION COMPANY.

*Personal injuries—Permission to Examine machinery—Licensee—Liability of Proprietor.*

Where the president of a corporation on the request of the principal of a school gives permission to a class of thirty or more students to visit the company's power house, for the purpose of viewing and examining the works and machinery therein contained, such students are mere licensees, to whom the company is under no obligation to provide against the danger of accident.

Where one of such students in examining the machinery fell into an uncovered vat of boiling water, located in a part of the building which was insufficiently lighted to enable him to see it, and was injured, the company is not liable in damages for failure to warn him of the existence of the vat or to cover the same, or to have the building lighted sufficiently to enable him to observe it.

APPEAL from the Court of Common Pleas.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., ROBINSON, BRYAN, ROBERTS, and McSHERRY, J.

*C. Hopewell Warner,* and *Thomas Mackenzie,* (with whom was *John V. L. Findlay,* on the brief,) for the appellant.

*N. P. Bond,* (with whom were *H. Munnikhuysen* and *Robert D. Morrison,* on the brief,) for the appellee.

ROBERTS, J., delivered the opinion of the Court.

On the 3rd of February, 1892, John W. Saville, Principal of the Baltimore Manual Training School, addressed a note to T. Edward Hambleton, the President of the Baltimore Traction Company, in the following words:

> "Baltimore Manual Training School,
> 311 to 327 Courtland street,
> John W. Saville, Principal.
> February 3rd, 1892.

"President Hambleton,

Sir:—Will you kindly grant permission to the graduating class of this school to visit the two power-houses of the Baltimore Traction Company?

> Respectfully,
> JOHN W. SAVILLE."

Upon which there was endorsed the following: "Admit the class as requested.

T. EDWARD HAMBLETON,

President."

The appellant, who was then a student in the Manual Training School of Baltimore, and a member of the graduating class therein, together with thirty or more scholars and teachers of said school, on the 12th of February, 1892, visited the power-house of the appellee, located on Druid Hill avenue in Baltimore City, and were admitted, and whilst passing through the building the accident happened, which occasioned this suit. On the 28th of October, 1892, the appellant brought suit in the Court below, and on the 16th of February, 1893, filed his declaration, embodying therein the facts relied upon, and claiming damages for the injury, which his son had sustained by the alleged negligence of the appellee. The appellee upon the filing of the declaration demurred thereto, and on issue joined thereon, the Court sustained the demurrer, and entered judgment for the appellee. This appeal is taken from the ruling and judgment of the Court below on the demurrer. The declaration contains two counts, in the first of which are the following averments:

1. "That the plaintiff, on or about the 12th day of February, 1892, whilst a student in the Manual Training School of Baltimore, and a member of the graduating class therein, was, with thirty odd other scholars and the teachers thereof, granted special written permission by the defendant company to visit a certain power-house situate in said city, the property of the defendant, for the purpose of viewing and examining the works and machinery therein contained.

"That on the day in question, in pursuance of said authority, the plaintiff, in company with his fellow-

students. and some of the teachers of said school was, after the presentation of said written permission to defendant's agent, admitted to the said power-house for the purpose aforesaid, and was thereupon taken in charge by one of defendant's agents, who proceeded to show the plaintiff and his companions through the ground floor of said premises, and who afterwards conducted them to the cellar or basement of said building for the purpose of showing them the workings of the cable and other machinery therein contained, and for a while remained with the said party, warning them as they proceeded and approached certain machinery to guard against particular portions thereof, which he pointed out to them as dangerous; that afterwards, and whilst in the midst of said examination, the said employé abandoned the said party and left them, instructing them, as he did so, to look around for themselves, without however, warning them of any further danger; that afterwards, whilst thus looking around for themselves upon said premises, in the exercise of due care and caution, and without fault on his part, the plaintiff suddenly, without warning or means of preventing it, fell into a vat or sink some two-and-a-half feet deep, full or nearly so of boiling water, which vat or sink was flush with the floor and uncovered, and situated in a part of the building insufficiently lighted, but through which portion of the premises the course of 'the examination permitted by defendant led plaintiff and his companions, of which vat or sink he had no previous knowledge, and which, *owing to the insufficient lighting of the said cellar or basement,* plaintiff was unable to see in time to prevent falling therein, of which pitfall the company nor its agents had warned him to guard against, although its existence and dangerous character and the plaintiff's ignorance thereof were known to the defendant, and in consequence of the neglect of the defendant, he was so badly scalded about

the lower part of his body, that he has been for a long time confined to his bed, and is sick and disabled, and has been permanently injured and rendered unfit to earn his livelihood by labor as heretofore.

The second count contains substantially the same averments as those set out in the first, and for the purposes of this case it is not necessary to repeat them.

The demurrer concedes the facts presented by the appellant's pleading, and the question for our consideration is, do the facts stated entitle the appellant to maintain this action for the recovery of damages for the alleged wrongs which he claims to have sustained? The authorities appear to have classified the subject under three heads, to wit:

1. Bare licensees or volunteers.

2. Those who are expressly invited or induced by the active conduct of the defendant to go upon the premises.

3. Customers and others who go there on business with the occupier.

Each case must largely depend upon the particular circumstances attending the occurrence, and it is not infrequently found to be difficult to determine whether the injured party is a mere licensee, or whether he is on the premises by the implied invitation or enticement of the owner or occupier. Those who enter on business usually experience but small difficulty in defining their legal *status*. There ought to be no controversy in this case as to the object which the appellant had in seeking admission to the power-house of the appellee. It certainly was not for the benefit of the appellee that the visit was made, but it was clearly a mere license from the appellee, assenting to the visit of the appellant and his schoolmates, to an examination of the works and machinery in the power-house, for the purpose of gratifying their curiosity, or of improving their knowledge of the workmanship of the machinery, and of the manner in which such power was

applied in moving the cars upon the streets of the city. There could not have been under these circumstances any possible opportunity for misconception as to the intention of the respective parties. Nor do we perceive where any benefit could have accrued to the appellee by the visit of these young men on the occasion mentioned. When the president of the appellee endorsed on the application of Mr. Saville, "admit the class as requested," could any reasonable inference be drawn from such endorsement that the appellee was seeking to entice, allure or induce the plaintiff and his associates to visit the power-house in question? The building in question was not constructed or used for exhibition or display, and the permission granted could only have been intended to give to the graduating class of the Manual Training School an opportunity to examine the application of vast power, obtained through the instrumentality of machinery of unusual character, and thus supply the class with an interesting object lesson in practical mechanics. The vat or sink in question was one of the appliances in use by the appellee at the time of the happening of the accident, for the purpose of aiding in the accomplishment of the work to be done, and was not placed there as a *man trap*. That it was located in a part of the building which was insufficiently lighted to enable the appellant to see it in time to prevent falling therein, was not negligence fairly imputable to the appellee, but rather was it negligence on the part of the appellant to grope about in a house dedicated to the use of dangerous machinery and appliances located in an insufficiently lighted place. Take as illustrating this view, the case of *Pierce vs. Whitcomb*, 48 *Verm.*, 127, where the plaintiff went at night to defendant's home to buy oats. The defendant had no oats which he wished to sell, but by reason of the plaintiff's importunity he agreed to sell him some, and they went together to the barn where the oats were kept.

While the defendant was seeking a measure, the plaintiff walked about the barn in the dark, and fell through a hole in the floor and was severely injured. The Court held that travelling about the granary in the dark not only contributed to the injury but was the cause of it, and that defendant was not liable. It has not been contended in this case that the vat or sink was such that the appellee in the conduct of its business might not lawfully construct or use, nor is it claimed that the injury happened through the wilful or wanton misconduct or gross negligence of the appellee. As already stated it is oftentimes difficult to determine whether the circumstances make a case of invitation or only of mere license. "The principle," says Mr. *Campbell* in his *Treatise on Negligence*, "appears to be that invitation is inferred where there is a common interest or mutual advantage, whilst a license is inferred where the object is the *mere pleasure or benefit* of the person using it." Equally pointed is the language of Mr. Chief Justice BIGELOW in delivering the opinion of the Court in *Sweeny vs. Old Colony and Newport Railroad Co.,* 10 *Allen,* 372, where he says: "In order to maintain an action for an injury to person or property by reason of negligence or want of due care, there must be shown to exist some obligation or duty towards the plaintiff which the defendant has left undischarged or unfulfilled. This is the basis on which the cause of action rests. There can be no fault or negligence or breach of duty where there is no act or service or contract, which a party is bound to perform or fulfil. All the cases in the books in which a party is sought to be charged on the ground that he has caused a way or other place to be incumbered, or suffered it to be in a dangerous condition, whereby accident and injury have been occasioned to another, turn on the principle that negligence consists in doing or omitting to do an act by which a legal duty or

obligation has been violated. Thus a trespasser who comes on the land of another without right cannot maintain an action, if he runs against a barrier or falls into an excavation there situated. The owner of the land is not bound to protect or provide safeguards for wrong-doers. So a licensee who enters on premises by permission only, without any enticement, allurement or inducement being held out to him by the owner or occupant, cannot recover damages for injuries caused by obstructions or pitfalls. He goes there at his own risk and enjoys the license subject to its concomitant perils. No duty is imposed by law on the owner or occupant to keep his premises in a suitable condition for those who come there solely for their own convenience or pleasure, and who are not either expressly invited to enter or induced to come upon them by the purpose for which the premises are appropriated and occupied, or by some preparation or adaptation of the plan for use by customers or passengers, which might naturally and reasonably lead them to suppose that they might properly and safely enter thereon." Further on he adds : "A mere naked license or permission to enter or pass over an estate will not create a duty or impose an obligation on the part of the owner or person in possession to provide against the danger of accident."

In *Hounsell vs. Smyth,* 7 *C. B.* (*N. S.*), 738, the distinction is clearly drawn between the liability of a person who holds out an inducement or invitation to others to enter on his premises by preparing a way or path by means of which they can gain access to his house or store, or pass into or over the land, and in a case where nothing is shown but a bare license or permission tacitly given to go upon or through an estate, and the responsibility of finding a safe and secure passage is thrown on the passenger and not on the owner, and the Court says: "Suppose the owner of land near the sea gives another leave to walk on the edge of the cliffs, surely it would be

absurd to contend that such permission cast upon the former the burden of fencing.'' Substantially the same distinction is made in *Barnes vs. Ward*, 9 *C. B.*, 394, (67 *Eng. Com. Law*); *Hardcastle vs. South Yorkshire Railway Co.*, 4 *Hurl. & Norm.*, 67; *Bolch vs. Smith*, 7 *Hurl. & Norm.*, 741, *and Scott vs. London Docks Company*, 11 *Law Times*, (*N. S.*), 383.

Mr. Justice CAMPBELL in *Hargreaves vs. Deacon*, 25 *Mich.*, 5, speaking of the existence of pitfalls in the highways and upon private property, says: '' Cases are quite numerous in which the same questions have arisen, which arise in this case, and we have found none which hold that an accident from negligence on private premises could make the ground of damages, unless the party injured has been induced to come by personal invitation, or by employment which brings him there, or by resorting there as to a place of business or of general resort, held out as opened to customers or others, where lawful occasions may lead them to visit them. We have found no support for any rule which would protect those who go where they are not invited, *but merely with express or tacit permission, from curiosity or motives of private convenience,* in no way connected with business or other relations with the occupant.'' The case in the record is lacking in many elements of strength to be found in the cases we have cited, and presents a bald case of ''permission asked, and leave granted.'' There is no privity of relationship between the parties. The appellant was not in the power-house by virtue of any right to be there, he only escapes being a trespasser, because of the appellee's assent. Permission involves leave and license, but bestows no rights. *Bolch vs. Smith*, 7 *Hurl. & Norman*, 745; *Hounsell vs. Smyth, supra ; Maenner vs. Carroll, et al.*, 46 *Md.*, 222. It has been earnestly contended that by the admission of the appellant to the power-house in the manner stated, a duty was thereby imposed upon the

appellee to guard the appellant from the dangers of said
vat, " by warning him of its existence or by covering the
same, so as to make his passage through said premises
reasonably safe." In this we do not concur. The vat
was apparently a part of the useful appliances connected
with the purposes for which the power-house was con-
structed, and was, as we have already said, in no proper
sense a man trap.

The appellee was under no obligation to take one of
his employés from his work to conduct the appellant
and his schoolmates, and their teachers, through the
power-house; nor was the appellee required to make
alterations in the manner in which it was accustomed
to conduct its business, in order that these young men
might go with safety through the building. They were
under the control and direction of the teachers, who
accompanied them, and the appellee might have reason-
ably inferred, that they were sufficiently cared for. Even
though the guide had continued with the class, there was
no reasonable guaranty that one of these thirty boys
would not have fallen into the self-same vat.

The principal of the school had, doubtless, some con-
ception of the character of the machinery and appli-
ances contained in the power-house, otherwise he would
scarcely have sought admission, and if there was negli-
gence anywhere, it consisted in bringing thirty odd boys
at one time to a building filled with dangerous machinery.
It is doubtless true that if the appellant had remained
with his fellows, and contented himself with their more
prudent course, he would not have met with the painful
accident, which befel him. In the case of *Galveston Oil
Co. vs. Morton,* 70 *Texas,* 400, a party called at the office
of the appellant, and requested permission to see one of
its employés. He was informed by some one in the office,
where he would likely find the person he sought, and
he went into the building for the purpose of finding

him, and in his search, he passed through a room where a large quantity of cotton seed was being manipulated, and stepping upon a pile of cotton seed, a foot and a half or two feet in depth, his foot sank down through the seed into a screw or endless worm under the floor, and was thus injured. The worm was concealed from view by the cotton seed, which may have been in motion, but was not seen by the appellee, who had no knowledge of the existence of the worm. The appellee's business was with the employé he sought, and not with the appellant. He did not request a guide, nor was any furnished, and no warning was given him of the danger. In this state of case, the Court, MALTBIE, J., delivering the opinion said: "In our opinion, the facts fail to show that appellant owed appellee the duty to send a guide along to prevent him from becoming entangled in the machinery, and being injured, for the reason, he was not there on business with appellant, or by its invitation, either express or implied, because he made no request for any one to accompany him. To require the proprietor of a steamboat, a factory, or a mill, conducted in the usual manner, whenever a man should ask permission to see an employé, engaged in his duties, to anticipate that such person might become involved in some dangerous machinery, hidden or open, would be to exact too high a degree of diligence; but the presumption should be indulged that the person making the inquiry is acquainted with the machinery, its construction and position, and needs no attendant, or otherwise he would have made a request to that effect."

In the recent case of *Ivay vs. Hedges, L. R.,* 9 *Q. B. Div.,* 80, the Court went very far in support of the doctrine of non-liability of an owner for injuries occasioned to others while upon his premises. There a landlord let out a house to several tenants, each of whom had the privilege of using the roof for the purpose of drying

their linen. The plaintiff, one of the tenants, while on the roof, slipped, and the rail being out of repair, (and known by the landlord to be so,) fell through it into the court below. Lord COLERIDGE said, that no liability rested upon the defendant for not keeping the rail in repair, in the absence of an absolute contract for the use of the roof, and held that "the tenant takes the premises as he finds them." The opinion of LINDLEY, J., in the case of *Burchell vs. Hickisson,* 50 *L. J., Q. B. C. P.* and *Exch.,* 101, is to the same effect.

In the appellant's brief there appears a quotation from the opinion of the Court in *Maenner vs. Carroll, et al.,* 46 *Md.,* 218, which is thought to sustain his contention in this Court. It reads as follows: "There is no doubt of the general proposition, that an obstruction or excavation made on a party's own land, and lawfully made, may give rise to an action, upon proof that such obstruction or excavation was concealed, and the plaintiff was invited or induced by the act or conduct of the defendant to pass over or near such obstruction, in ignorance of its existence, whereby injury resulted. In such case the plaintiff would have a right to rely upon the good faith of the defendant." This is, however, only a part of the paragraph, and is somewhat misleading. We complete the paragraph, which reads as follows: "And to this effect are several of the authorities relied on by the plaintiff's counsel in this case; but there is nothing shown on the face of the count under consideration to justify the conclusion that the plaintiff was in any manner invited or induced, by any act of the defendants, to pass over the lot where the accident occurred." And so in this case we are compelled to say, that there is nothing in the declaration supplemented with the request of Mr. Saville, and the assent of the appellee, to justify the conclusion, that the appellant was in any manner invited or induced, by any act of the appellee, to visit

its power-house, but he went there solely for his own personal benefit and pleasure, and he must accept the consequences, unfortunate though they be.

It follows from what we have said, that the Court below committed no error in sustaining the demurrer to the declaration, and the judgment must be affirmed.

*Judgment affirmed.*

(Decided 21st June, 1893.)