CARROLL ET AL. *v.* SPENCER ET AL.
(Two Appeals in One Record)
[No. 125, October Term, 1953.]

388

*Decided April 28, 1954.*

The cause was argued before BRUNE, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Michael Paul Smith* and *W. Lee Harrison* for the appellants.

*Jesse Slingluff, Jr.,* and *Kenneth C. Proctor* for the appellees.

HAMMOND, J., delivered the opinion of the Court.

The infant appellant, an eight year old boy, on his way home from school with three schoolmates, strayed into a partially finished house which was being built for sale by the individual appellee and the corporate appellee, and after playing about the house for a few minutes, fell through a hole in the floor and was seriously injured. In the suits for damages by the infant and his father, which followed, and which were tried together, the court directed a verdict for the defendants at the close of the plaintiffs' case. This appeal from the judgments entered for the appellees challenges the correctness of the court's ruling that the evidence was legally insufficient to support a finding of negligence. In order to simplify the discussion, we shall refer throughout to the infant appellant as the appellant.

Giving the appellant the benefit of the evidence, and the permissible inferences, most favorable to his cause, as we, of course, do, there is testimony to show these facts and circumstances: The children entered the house from the front. It was in the stage of construction where the studdings were up but no partitions had been put on. There were no doors, no front or back steps, and no glass in the window frames. There was an open hole near the rear doorway entrance about three feet wide and six feet long, and the edge of the hole close to the doorway was about forty-two inches from it and almost directly in front of it. It had been cut preparatory to the installation of stairs to the basement. Beneath the hole, the surface was unpaved and had debris, rock and brick on its surface. A ladder, sticking out of the hole, extended about two and a half feet above the floor level. The children had seen a for sale sign and had noticed adults going through the house on previous occasions. As they went through the front entrance-way, the appellant saw the foreman employed

by the appellees in the front yard, and called out to him. The children say he looked at them but made no answer. They went through the house to the rear doorway, and two of them went outside to a dirt pile. A mud battle ensued between the two inside and the two in the back yard. One of the boys was throwing mud balls out the window near the rear doorway, and the appellant was throwing mud balls through the doorway, and then stepping to one side to avoid being struck by returning mud balls thrown by the two outside. As the appellant was "standing by the door" and his companion was "standing by the window", the foreman walked by a picture window in the front of the house and stopped and looked in, according to the testimony of the boys. They say he looked right at them, and then walked on. Five or ten minutes later, in the course of the mud battle, the appellant stepped back several steps from the doorway and fell into the hole. He and his companions say that there were shadows inside of the house—the accident occurred about four o'clock on a February afternoon—with patches of sunlight coming through the doorway and open windows, and that they did not see the hole because it was obscured by shadows. The appellant's companion admitted, however, that when he first came into the house he walked past the hole and that although he could not see it too well, he could see the edges around it and that he saw the ladder sticking up out of the hole.

The appellant says that because the appellees intended to sell the house when finished, and had posted the for sale sign, they were extending an invitation to the public to enter to inspect the property. These facts, he says, made not only prospective buyers, but also the children, invitees, to whom the appellees owed the duty of ordinary care. He says further that even if he is considered a trespasser or bare licensee, the appellees were negligent because he was in a position of imminent peril between the door and the shadow covered hole, when the foreman looked in the window at him, and that

there then arose a duty on the foreman to drive him off the property or to warn him of the danger of the open hole. In effect, too, it is suggested that the hole, obscured as it was by shadows, was a hidden peril—a trap.

The appellees agree that the owner of land has a duty not to use his property as a trap, or covertly alter it so as to create hidden peril, to ensnare the unwary. They go on to say that the evidence shows that they did not so do, and shows, as a matter of law, that the appellant was a trespasser to whom they, as the owners of the property, owed no further duty, even though his presence was known, other than to abstain from wilful or wanton misconduct.

We think that under the law which has been established by this Court, stricter than that of many jurisdictions, the appellees' views on both points are sound, and control the decision here.

On the first point, it has been held that an improperly lighted vat of boiling water, flush with the floor, used in the owner's business, was not a trap. *Benson v. Baltimore Traction Co.*, 77 Md. 535. In *State, Use of Alston v. Baltimore Fidelity Warehouse Co.*, 176 Md. 341, an eleven year old boy fell from a crude raft moored two or three feet from the defendant's pier and drowned. The Court refused recovery, saying that there was nothing to indicate: ". . . the raft was a trap or its danger covert." An open trap door, about the size of the hole in this case, behind the counter in a store, was held not to be a trap or hidden alteration condemned by the law in *Pellicot v. Keene*, 181 Md. 135. A pile of lumber stacked so carelessly that it fell upon a passer-by, was held not to constitute a trap in *Baltimore City v. De Palma*, 137 Md. 179, although beside the pile, there was a regularly used right-of-way—and this was known to the owner.

On the second point, admittedly the appellant and his friends went into the premises to play. Whatever the effect of the for sale sale sign as an invitation to pro-

spective purchasers, clearly it was not an invitation, express or implied, for children to come to play on the property. We find that the appellant was not on the premises in connection with any interest or business of the appellees, immediate or remote, and so was a trespasser. Cf. *Kalus v. Bass*, 122 Md. 467, where the injured child accompanied his father, an express invitee, to unsafe premises, and was permitted to recover on the ground that he was at least an implied invitee. The status of the children would not change to that of invitees because the appellees, through their foreman, knew that intruders were on the property and in a position of potential danger by virtue of the unfinished condition of the house, and did not drive them off. Acquiescence is not invitation, and at most, changes the status of the trespasser to that of bare licensee, to whom the owner owes no greater duty than to a trespasser. *Jackson v. Pennsylvania R. R.*, 176 Md. 1; *Benson v. Baltimore Traction Co., supra; State, Use of Lorenz v. Machen*, 164 Md. 579; and *Duff v. United States*, (4th Cir.) 171 F. 2d 846.

The courts of the country are divided on the law to be applied in the case of a trespasser, or bare licensee, known to be on the property, in suits for negligence against the owner. Under one line of cases, which follows what was known as the Michigan rule, the fact that the trespasser's presence is known, requires the owner to exercise ordinary care as to him. Under what is known as the Massachusetts rule, the owner is under no such obligation. His sole duty is to abstain from intentional injury. The standard, under this rule, includes something more than ordinary inadvertence, and, in essence, is like a wilful, intentional wrong. See *Peaslee, Duty to Seen Trespassers*, 27 Harvard Law Review, 403. The *Restatement, Torts*, Sections 337-339, adopted the essence of the Michigan rule, while Maryland has continued to follow the substance of the Massachusetts rule. This is made clear by *Jackson v. Pennsylvania R. R., supra;* and *Duff v. United States, supra.* In the *Duff*

case, Judge Soper said for the Court (at page 850 of 171 F. 2d) : "Generally speaking, the owner of land in Maryland owes no duty with respect to the condition of his land to a trespasser, or even to a licensee, whose presence upon the land is known to him, except to abstain from wilful or wanton misconduct. *Benson v. Baltimore Traction Co.,* 77 Md. 535, 26 A. 973, 20 L. R. A. 714, 39 Am. St. Rep. 436. The owner owes no duty to the trespasser or licensee to keep the premises safe or to anticipate his presence and warn him, and the trespasser or licensee acquires no right of recovery except in the case of wilful injury. *Gordon Sleeprite Corp. v. Waters,* 165 Md. 354, 168 A. 846; *Pellicot v. Keene,* 181 Md. 135, 28 A. 2d 826; *Steinwedel v. Hilbert,* 149 Md. 121, 131 A. 44."

For the appellant to prevail in his argument that his position near the hole was perilous to a point requiring the foreman to then warn him or be liable, he would have to surmount two hurdles, the first, factual, and the second, legal. First, it was not proven that the foreman, as he crossed the picture window in the front of the house, saw the appellant. The appellant relies on the dark shadows within the house as justification for failure to see the hole into which he fell, and in support of his claim that the obscured hole three feet from him constituted a peril. These same dark shadows may well have prevented the foreman, as looked from the brightness of the exterior into the comparative darkness of the interior, from seeing the boy, unless the rear doorway, into which the sun was shining, had served as a frame for the youngster. The testimony, however, is that as the foreman passed by the picture window, the appellant was "standing by the doorway". The boys said that, except when they were throwing mud balls through the apertures, they protected themselves from returning mud balls by standing behind the walls of the house. One of the children who was outside testified that there were patches of light where the door and windows were, and: ". . . then when you stepped back

a couple of feet, it would be dark in the middle." He was asked if he could see the appellant and the other boy from the outside, and said he could when they were close to the door or window, because: ". . . it was dark a couple of feet away from the windows and doors." The testimony leaves it uncertain how close to the doors and windows the boys were, and whether in a dark or light part of the house, when the foreman looked in.

Second, on the legal hurdle, if it be assumed that the foreman saw the appellant because of the testimony that he looked at him, as the appellant urges it must be, it does not follow that the appellees are liable for the accident which followed five or ten minutes later. The appellant's own testimony, corroborated by that of the other boy in the house, as to the length of time which passed between the moment the foreman saw him and the fall into the hole, shows that he cannot, in any sense, have been in either real or imminent peril. The peril of a trespasser which requires the owner of property, if he is to avoid liability, to refrain from wilful injury, must be actual and immediate. It is not the mere possibility that harm will ensue from the act, or failure to act, of a trespasser who has the natural faculties and the opportunity in time and environment to avoid such harm, which will impose liability on the owner. For example, it has been held that: ". . . where a party is discovered on the track of a railroad in the full power of locomotion and no impediment to his escape, those on the train may well act upon the assumption that he will use his senses for his protection and get out of the way of danger before he is struck." *Garvick v. United Rwys. Co.*, 101 Md. 239, 246. *Chesapeake Beach R. Co. v. Donahue*, 107 Md. 119. *Benson v. Baltimore Traction Co., supra,* was decided on demurrer to the declaration. It was alleged that the president of the traction company granted written permission to the graduating class of a school to visit the power house of the company. One of the employees showed the plaintiff and his classmates through the ground floor and basement of

the power house, pointing out certain machinery and warning against its danger. Afterwards, he abandoned the party, instructing them, as he did so, to look around for themselves, without warning them of further danger. While looking around, the plaintiff fell into a vat of boiling water, flush with the floor, uncovered, and: ". . . situated in a part of the building insufficiently lighted, . . ." It was further alleged that by reason of the insufficient lighting, the injured boy failed to see the vat and that he had not been warned of its existence and dangerous character. The Court held that he was not an invitee but a licensee only, and as such could not recover for damage caused by obstructions or pitfalls. Certainly the traction company had far more reason to anticipate and guard against danger to the licensee in that case than did the foreman in the case of the appellant here. The appellant does not suggest that there was a duty under the Maryland law to warn the boys or to chase them away from the property at the time they entered the half finished house. The duty of the appellees was no different at the time the foreman passed the picture window when the appellant was standing three feet from the hole. There are innumerable potential dangers in a half finished house, and the hole into which the appellant fell was only one of the many. If there was no duty to warn as to the aggregate of the possible dangers at the time the appellant came on the property, there was no duty to warn as to one of the many. The appellees are not liable because they did not act in anticipation that, as a fact, the appellant, by his own lack of care, would bring about injury to himself, merely because he was in a position where that could occur.

We find that the appellees had no actual knowledge of a real and imminent peril of the trespasser, or bare licensee, and that this being so, owed him no duty under the facts of the case. The trial court was right in withdrawing the case from the jury.

*Judgments affirmed, with costs.*