Michael Francis Fay JONES, a minor, by his father and next friend, Arthur Edgar Jones, Jr., and Arthur Edgar Jones, Jr.,

v.

The CITY OF ABERDEEN, MARYLAND, a municipal corporation,
and
United States of America, Defendant and Third-Party Plaintiff,

The PENNSYLVANIA RAILROAD COMPANY, Third-party Defendant.

Civ. A. No. 7779.

United States District Court
D. Maryland, Civil Division.

March 12, 1956.

Bertrand H. Merwin and Russell Brown (McGrath & Brown) Washington, D. C., John H. Dryden, Harry T. Gross, Richard Whittington Whitlock, Baltimore, Md., for plaintiffs.

George Cochran Doub, U. S. Atty., Herbert F. Murray, Asst. U. S. Atty., Baltimore, Md., for defendant.

CHESNUT, District Judge.

On October 9, 1952, the plaintiff, Michael Francis Fay Jones, a 23-month old boy, strayed onto the railroad right-of-way of The Pennsylvania Railroad Company in the City of Aberdeen in Harford County, Maryland, where he was struck by a fast train of the Railroad, as a result of which both legs were amputated. This occurred about 10:30 A.M. The boy was taken to the hospital where his life was saved by surgical and hospital care.

The little boy was the minor child of Mr. and Mrs. Arthur Edgar Jones, Jr. They were tenants under written lease of a small dwelling house known as No. 12 Taft Street, which was one of about 250 units in a building project of the Public Housing Administration of the United States. The housing project had been constructed in 1943 under the authority of the Lanham Act, 42 U.S.C.A. §§ 1521-1524, particularly for accommodation of government workers or employees at the Aberdeen Proving Grounds in Harford County; but the housing accommodations were also made available for tenants other than employees of the United States. The rental per month was $32. The house was occupied by Mr. and Mrs. Jones, the former an ammunition worker at the Aberdeen Proving Grounds. The lease was made in March 1952.

Between the railroad tracks and the housing project was a large, open, fairly level field included in the whole area which had been leased for a lengthy pe-

riod to the United States for the purposes of the project.

The lease was in the form of a Registration Certificate which designated the premises known as No. 12 Taft Street and was signed by Mr. and Mrs. Jones. It referred to a printed paper called "Terms and Conditions of Occupancy" which, under the line of "Signature of Tenant" bore the signature of Marjorie Joan Jones, the wife of Arthur Edgar Jones, Jr. Among the terms and conditions of occupancy paragraph 6 headed "Occupant's Responsibilities" contains the following:

"(a) Aid in Maintenance.—The PHA and the occupant/s shall cooperate in care of the dwelling and grounds. The occupant shall notify the Housing Manager of damage or need for repair of property.

"(b) Alterations by Occupants.—No alterations or repairs to the dwelling or any of its equipment, nor interior or exterior additions to the dwelling structure, grounds, or other appurtenances shall be made by the occupant without the consent of the Housing Manager."

There was no provision in the terms of occupancy requiring the PHA to make repairs or improvements to the property.

On the morning of the accident to the little boy, his mother, then 20 years of age, took him with her to the house of a nearby neighbor for the purpose of making a telephone call. While she was so occupied she permitted the child to go out of the house because he wished to see some puppies in a box in the yard of a nearby house. After about five minutes the mother went out of the house to find the little boy but he had gone away. Various neighbors and apparently also the Aberdeen Police were notified and in about an hour or so the little boy was found on the railroad tracks badly injured.

In the complaint as originally filed, including the City of Aberdeen as a joint co-defendant, it was alleged that the City had conducted the open field adjoining the project between the latter and the railroad as an organized playground for children. On motion, the suit as to the City of Aberdeen was dismissed because it was a municipal corporation which, under the Maryland law, was not legally liable in a case of this kind which, according to the complaint, was in the nature of government activity. After argument and hearing of opposing counsel the City of Aberdeen was dismissed as a defendant. This was not at the time opposed by counsel for the plaintiffs, especially as it was then conceded that there was no evidence available to show that the City of Aberdeen had used the field as a playground.

At the trial of the case against the United States, a large aerial photograph showing the housing development, the nature of the terrain between it and the Pennsylvania Railroad, and the nature of the buildings and improvements on the other side of the railroad was offered in evidence. The railroad is the main trackage line of the Pennsylvania Railroad for both north and south bound traffic between Baltimore and Philadelphia. It had been in existence in the same location for many years prior to the erection of the building project in 1943 and was so existent in 1952. The railroad consisted of three sets of tracks at that point. It has approximately 117 trains passing within a twenty-four hour period, many of which are fast express trains. The conditions with respect to the project and the railroad were plainly apparent to the tenants of the project when Mr. and Mrs. Jones rented their house in the project in March 1952, and are not materially different at the present time. Many photographs were offered in evidence showing the general nature of the particular area. The open field between the houses in the project and the railroad tracks was not referred to by reference or otherwise in the lease to Mr. and Mrs. Jones; nor was there any evidence that the PHA had ever provided any organized playground for the tenants or their children; but there was evidence that temporarily during the

summer of 1952 the General Manager of the project, Mr. Work, had given permission to a Little League baseball team to play some baseball games there and had permitted a catcher's backstop to be erected, and some time in the fall of 1952 permission had been granted to students of the Aberdeen High School to practice football in that area. It also appeared that at times children played on this field, but there was no evidence that this was done by arrangement or agreement between the tenants of the project and the management. There was also evidence that there was a considerable growth of underbrush on the embankment between the field and the railroad tracks, and that at times for convenience and as a short-cut some of the tenants of the project or others crossed the open field to paths through the underbrush to the right-of-way of the railroad and then crossed the railroad tracks to get to one or more buildings on the other side of the tracks. These were not authorized or otherwise designated railroad crossings and there was no evidence that they had in any way been consented to, or invited by, or even intentionally permitted by the railroad. There was no definite or beaten path across the open field leading to any of the paths through the underbrush.

The evidence is not clear or definite with respect to how the little boy got upon the tracks nor what particular course he followed in crossing the open field. He was found on the tracks at a point approximately 280 feet south of a railroad signal tower, that is, at a point nearly at the south end of the building project and a few hundred feet north of the main East-West traffic road in the center of the town of Aberdeen. The father of the boy stated that some hours after the accident he found the boy's glove in or near one of the paths through the undergrowth, but on the whole evidence I do not find that persuasive to show that the boy did enter onto the railroad track at that point.

The plaintiffs' case was originally based on the alleged negligence of the PHA in not affirmatively adopting measures to prevent tenants and their children from going onto the railroad tracks. Specifically it was first contended by counsel for the plaintiffs that under the existing circumstances in October 1952 there was the affirmative duty on the PHA to have erected a fence on the boundaries of the field adjacent to the railroad right-of-way. Later the most specific contention was that it was the duty of the PHA to have provided a play pen or play yard for children of the tenants, and it was not contended that there was any duty on the part of the PHA to erect barriers to prevent crossing the railroad by adult tenants of the project or their children of sufficient age to have discretion and understanding with regard to the danger of going onto the tracks of the railroad. Counsel for the plaintiffs disclaimed any basis for negligence on the theory of an attractive nuisance, which indeed is not authorized by the decisions of the Maryland Court of Appeals. See State, to Use of Lorenz v. Machen, 1933, 164 Md. 579, 165 A. 695; State, to Use of Alston v. Baltimore Fidelity Warehouse, 1939, 176 Md. 341, 4 A.2d 739.

As the suit is under the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346, 2671 et seq., it is clear that the law of Maryland is governing here. I do not find any Maryland law which would impose liability on the PHA under the facts and circumstances of this case. The branch of the law here involved is, of course, the obligations of a landlord with respect to a tenant. The only judicial authority cited by counsel for the plaintiffs in support of their contention is a fairly recent decision of the Court of Appeals for this Fourth Circuit, State of Maryland for Use of Pumphrey v. Manor Real Estate & Trust Co., 1949, 176 F.2d 414. In that case it was held that the PHA as landlord of a dwelling house in a block on North Calvert Street in Baltimore was liable for the death of a tenant caused by typhus attributable

to a rat infested part of the building included in the lease to the tenant as a part of the building for the common use of many tenants. The duty of the landlord to keep such premises in a reasonably safe condition was recognized. The facts of the present case, however, are so far removed factually from that case that it seems to me to have no application here.

■ In defense of the case the Assistant United States Attorney, Mr. Herbert F. Murray, urges three points of law, well established, I think, in Maryland, each and all of which constitute a clear defense to this suit under its particular facts. I think it is clearly the Maryland law that when a tenant leases property the nature, incidence, location and surroundings of which are open and apparent, and clearly known to and understood by him, he takes the property as it is at the time. The law, of course, is different where facts are known to the landlord which are not apparent to the tenant as, for instance, where there are latent defects or existing dangers not readily apparent to the inspection of the tenant and not known to him. Nor is the landlord required to make repairs or improvements of any kind unless required by the terms of the lease or rental contract. Smith v. State, Use of Walsh, 1901, 92 Md. 518, 48 A. 92, 51 L.R.A. 772; Sherwood Bros., Inc., v. Eckard, 1954, 204 Md. 485, 105 A.2d 207; Miller v. Howard, 1955, 206 Md. 148, 110 A.2d 683. This rule is applicable not only to the tenants who sign the lease or make the rental contract but also is applicable to the members of their household including minor children. 52 C.J.S., Landlord and Tenant, § 419. And this indeed is the generally prevailing law in other jurisdictions, A.L.I. Restatement of Torts, ss. 356, 358.

Counsel for the plaintiffs has read into the record some sentences from a Manual of Instructions to Managers of Public Housing Development which were thought by him to have some bearing upon this case; but on reading them I do not find that they impose any greater liability on the landlord than is included in the lease in the case.

The case of McCarthy v. New York, N. H. & H. R. Co., 2 Cir., 1917, 240 F. 602, is here much in point. In that case a railroad leased to a tenant a house almost immediately adjoining its railroad tracks. A minor child of the tenant about six years of age, went onto the railroad tracks and was killed. In a suit against the railroad it was held that there was no duty on the railroad as lessor to erect a fence between the tracks and the leased premises.

■ Another point in defense of the case is the well-established Maryland law with respect to the use of property of the landlord when used by tenants or others not constituting a part of the premises demised to the tenant. As to such adjoining property the user may be in the status of a trespasser or licensee or an invitee. Here, in my opinion, the tenants who made any use of the open field between the project and the railroad had the status at best of only licensees. As to the licensee the Maryland law is clearly established that the owner is not responsible for accidents happening to a licensee other than those caused by hidden or secret dangers or pitfalls which were known or ought reasonably to have been known to the owner and as to which no warnings were given to the user. State, to Use of Lorenz v. Machen, supra; Carroll v. Spencer, 1954, 204 Md. 387, 104 A.2d 628, 44 A.L.R.2d 1247; Duff v. United States, 4 Cir., 1949, 171 F.2d 846, where the Maryland cases are reviewed, and affirming the same case in the District Court of Maryland, Baltimore Daily Record, March 16, 1948. See also Cohen v. Davies, 1940, 305 Mass. 152, 25 N.E.2d 223, 129 A.L.R. 735.

The contention most emphasized by plaintiffs' counsel is that the defendant landlord owed a greater measure of duty to the infant child of the tenant than to the tenants themselves. He concedes

that there was no duty on the landlord to build a fence to separate the premises from the railroad tracks so far as the adults are concerned, and that if either of them, both of whom had full knowledge of the existence of the railroad when the lease was made, had gone upon the railroad tracks and been injured, there would have been no liability on the defendant. But it is contended that it is otherwise with respect to the minor child of the tenants.

■ I do not think this contention is in accordance with the Maryland law. The general rule is that the landlord has no greater liability to minor children or other members of the household of a tenant, than to the tenants themselves. See Smith v. State, Use of Walsh, supra; Thompson v. Clemens, 1903, 96 Md. 196, 53 A. 919, 60 L.R.A. 580; Pinkerton v. Slocomb, 1915, 126 Md. 665, 95 A. 965; Robinson v. Heil, 1916, 128 Md. 645, 98 A. 195; Harrison v. Mortgage Investment Co., 1932, 61 App.D.C. 155, 58 F.2d 881, opinion by Judge (later Chief Judge) Groner.

■ Of course a child of less than two years of age would not personally be subject to the defense of contributory negligence; but where the circumstances require protection or supervision of children the duty to exercise sufficient care is necessarily shifted to the parents; and the landlord will not be legally liable for injuries incurred by children who have not been sufficiently supervised. In this respect it must be said that the negligence of the parents is imputable to the children. Cumberland v. Lottig, 1902, 95 Md. 42, 51 A. 841; Graham v. Western Maryland Dairy, 1951, 198 Md. 210, 81 A.2d 457.

For all these reasons I conclude that the complaint in this case against the United States must be dismissed. And this conclusion will make it unnecessary to proceed with the third-party complaint in the case against The Pennsylvania Railroad Company.