Nelson H. WURZ, Appellant,

v.

ABE POLLIN, INC., Miller & Long Co., Inc., and W. T. & C. Corporation, Appellees.

No. 11263.

United States Court of Appeals
Fourth Circuit.

Argued June 23, 1967.

Decided Sept. 29, 1967.

John D. Alexander, Jr., Baltimore, Md., and John A. Kendrick, Washington, D. C. (John D. Alexander, and Constable, Alexander & Daneker, Baltimore, Md., on brief) for appellant.

Samuel S. Smalkin, Baltimore, Md. (Rollins, Smalkin, Weston & Andrew, Hyman Ginsberg, and Ginsberg & Ginsberg, Baltimore, Md., on brief) for appellee Abe Pollin, Inc.

Michael P. Crocker, Baltimore, Md. (Dewey B. Morris, and Piper & Marbury, Baltimore, Md., on brief) for appellee Miller & Long Co., Inc.

John F. King, Baltimore, Md. (Thomas G. Young, III, and Anderson, Coe & King, Baltimore, Md., on brief) for appellee W. T. & C. Corp.

Before HAYNSWORTH, Chief Judge, WINTER, Circuit Judge, and HUTCHESON, District Judge.

STERLING HUTCHESON, District Judge:

Under contract with the owners, The Mensh Corporation, Appellant, Abe Pollin, Incorporated, hereinafter referred to as Pollin, as general contractor engaged in the construction of the Linden Hill Apartment Hotel in Montgomery County, Maryland. Jurisdiction rests upon the Diversity Statute.

Subcontractors on the job included Miller & Long, who did the concrete work, and W. T. & C. Corporation which had a contract to install plumbing, heating and air conditioning. Melaine Kahane, Associates, was under contract directly to the owner, Mensh, to install bedspreads, draperies and bed canopies in completed apartments in the building and in turn entered into a contract with Nelson H. Wurz to make the installations.

On the evening of November 27, 1963, the occurrence giving rise to this action took place. At that time the building was incomplete and in a rough stage of construction with the exception of an area in which were located three completed apartments on the first floor. The following day was the beginning of a four day weekend holiday and the owner was desirous of placing these apartments on display during that period. At about 7 o'clock in the evening, Wurz went to the premises to complete one final item of installation consisting of placing a canopy over a bed in one of the apartments. This was after working hours and it seems that with the exception of a watchman the workmen had left the area for the day. The area in which the completed apartments were located was to the right of the lobby as one enters and faces the elevators. While engaged in installing the canopy Wurz found that pins in the four poster bed were so deeply imbedded that it would be necessary that they be pulled out. Because of the height of the bed he was unable to reach the pins, so he proceeded to search the corridors of the completed part of the building for something to stand on. Being unable to find something suitable, he went into the unfinished area in which he had previously been to submit a bid for certain other draperies. While the lobby was lighted, there were no lights in the area which he entered except some light cast from the lobby and there was a bright moon which cast some light through the appertures where the windows would be. Within the darkened area was a hole through the concerte floor 4½ feet long and 20 inches wide left by the concrete workers for the insertion of a duct. There were spikes protruding into the apperture from the framing. Wurz fell into this hole and sustained painful and severe injuries.

This suit was filed against Pollin, Miller & Long and W. T. & C. to recover for such injuries.

█ At the conclusion of the evidence there were motions for directed verdicts as to all defendants, which motions were granted by the court. So far as Miller & Long and W. T. & C. are concerned it is clear that there is no evidence upon which any recovery could be had against them. They were sub-contractors of Pollin and there was no evidence that they were using the premises at the time of this occurrence and in fact Miller & Long had actually completed its work in the area. It follows that this action of the court should be affirmed.

The case against Pollin presents a somewhat different situation, although we are of the opinion that as to Pollin the action of the court also should be affirmed.

█ It is contended that by force of a contract between Pollin, the contractor, and Mensh, the owner, Pollin stands in the position of the owner and since Wurz was performing services under a separate contract with such owner, he became an invitee of Pollin because his work was in connection with the owner's business. We are unable to agree with this contention. There is no showing that Pollin

was in any way concerned as to whether the decoration of the apartments was completed in time to be suitable for showing on the specified date. The contract for such decoration was a matter directly with the owner and unrelated in any way to the work of Pollin; with no privity whatever between Pollin and Wurz, whose area of work was in the completed apartments and the immediate surroundings. It follows that by no process of reasoning could Wurz occupy the position of an invitee of Pollin. As to his relationship with Mensh, we express no opinion since that is not a question before the court. From what has been said, it follows that Wurz was a licensee at most, or perhaps a trespasser, so far as Pollin is concerned.

The Maryland rule concerning the duty owed a licensee seems to be well established.

■ In an exhaustive consideration of the duty of the owner of land to a licensee or trespasser, in Duff v. United States, 171 F.2d 846, at page 848, Judge Soper wrote:

"In Maryland, the duty of the possessor to use care to avoid injury to a trespasser or licensee upon his land does not arise until he has actual knowledge that the other is in peril; and if he fails under such circumstances to exercise the care of a reasonably prudent man he is said to act with reckless disregard of the safety of others and his action is described as wilful or wanton misconduct."

And at page 850 he wrote:

"Generally speaking, the owner of land in Maryland owes no duty with respect to the condition of his land to a trespasser, or even to a licensee, whose presence upon the land is known to him, except to abstain from wilful or wanton misconduct. Benson v. Baltimore Traction Co., 77 Md. 535, 26 A. 973, 20 L.R.A. 714, 39 Am.St.Rep. 436. The owner owes no duty to the trespasser or licensee to keep the premises safe or to anticipate his presence and warn him, and the trespasser or licensee acquires no right of recovery except in the case of wilful injury. Gordon Sleeprite Corp. v. Waters, 165 Md. 354, 168 A. 846; Pellicot v. Keene, 181 Md. 135, 28 A.2d 826; Steinwedel v. Hilbert, 149 Md. 121, 131 A. 44."

See also Carroll v. Spencer, 204 Md. 387, 104 A.2d 628, 44 A.L.R.2d 1247 (1954).

Restatement Torts, Sec. 342, provides:

"A possessor of land is subject to liability for bodily harm caused to gratuitous licensees by a natural or artificial condition thereon if, but only if, he

(a) knows of the condition and realizes that it involves an unreasonable risk to them and has reason to believe that they will not discover the condition or realize the risk, * * *."
(The Section has been slightly changed to include cases where the occupier "has reason to know of the condition.")

■ In Jones v. City of Aberdeen, 138 F.Supp. 727 (D.Md.1956) the Maryland law is summarized as follows by Judge Chesnut:

"As to the licensee the Maryland law is clearly established that the owner is not responsible for accidents happening to a licensee other than those caused by hidden or secret dangers or pitfalls which are known or ought reasonably to have been known to the owner and as to which no warnings were given to the user."

In Holcombe v. Buckland, 130 F.2d 544, this court stated that "If such person (the licensee) goes there by mere sufferance or naked license, it would seem reasonable that he should pick his way, and accept the grace, subject to the risks which pertain to the situation. But, on the other hand, if, with knowledge that such person will avail himself of the license, the owner actively change(s) the situation by digging a pitfall, or opening a ditch, or obstructing dangerously the premises which he has reason to believe will be traversed by his licensee, sound morals would seem to demand that he should give reasonable warning to the danger to be encountered."

■ It is also well settled that the licensor must refrain from willfully or wantonly injuring the licensee or from entrapping him.

■ Applying the foregoing principles to the facts of this case, it clearly appears that none of these conditions existed. Work for the day in this area had closed down. The employees of Pollin had departed and the area was in darkness, or at the most, semi-darkness, with no artificial light excepting some light cast from the lobby. A saw horse blocked the entrance to the area. Wurz had been in the area on one or more previous occasions during working hours with adequate lighting for the purpose of obtaining information sufficient to submit to Mensh a bid for supplying draperies for the windows, but so far as the record discloses he had been there at no other time. Even had a greater duty than that owed a licensee rested upon Pollin, Pollin could not have been expected to reasonably anticipate that any person would invade this area at this stage of operation. He could not be expected to anticipate any such occurrence as took place. Without negligence on the part of Pollin, he can not be held liable nor could he be expected under these circumstances to give warning of any danger which might be encountered.

As said by this court in Kalopodes v. Federal Reserve Bank of Richmond, 367 F.2d 47, at page 52 (4 Cir. 1966):

"There is a substantial difference in proceeding blindly into an unlighted area with which one is unfamiliar, but in which certain hazards are commonly encountered, * * * and proceeding into an unlighted area with which one is sufficiently familiar to entertain a reasonable belief that he is aware of all existing hazards and can avoid them."

■ In addition to the foregoing, we find that Wurz, as a licensee, was guilty of negligence which at least proximately contributed to his injuries. He was a carpenter with long experience in the construction business. In addition to this experience, the nature of his present work required that he go upon buildings during the construction stage for the purpose of preparing estimates to furnish draperies and decorations upon completion of the work. He knew that in construction of concrete floors in buildings such as this, holes, as the one here involved, existed. While he had been in this area on at least one other occasion for the purpose of making estimates, he had not noticed this particular hole but he knew there were pipes sticking up. He knew there was no artificial lighting in the area except that which penetrated the darkness from the lobby and from moonlight through the window appertures. His vision was 20–20 as corrected. He took no precautions, such as the use of a flashlight which was in his automobile parked outside. He stated frankly that his vision was concentrated on a level of 5 to 7 feet and that he proceeded without looking down to see where he was walking. If it was too dark to see the hole in the floor he should not have entered this area without some lighting equipment. If it was sufficiently light to see, he should have watched where he was walking.

■ In White v. State of Maryland, 106 F.2d 392, at page 397 this court stated the rule as follows:

"The act relied on to establish as a matter of law the existence of contributory negligence must be distinct, prominent, and decisive, and one about which ordinary minds would not differ in declaring it to be negligent."

Applying this test to the facts here presented, it follows that Wurz was guilty of negligence contributing to his injury which precludes his right to recover.

Accordingly, the action of the District Court is

Affirmed.