GRAY, to her own use and to the use of Baltimore
Sheraton Corp. *v.* SENTINEL AUTO PARKS
COMPANY ET AL.

[No. 229, September Term, 1971.]

*Decided March 15, 1972.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

*Philip O. Foard,* with whom were *George W. White, Jr., Buckmaster, White, Mindel & Clarke* and *Lloyd S. Mailman* on the brief, for appellant.

*Thomas G. Andrew,* with whom were *Rollins, Smalkin, Weston & Andrew* on the brief, for appellees.

FINAN, J., delivered the opinion of the Court.

In this appeal we are again concerned with the tenuous distinction which the law observes between an invitee and a bare licensee. The case turns on the status of the plaintiff-appellant at the time of her injury.

Mrs. Geraldine Doris Gray, appellant and plaintiff below, formerly employed as a waitress in the now defunct Belvedere Hotel (Hotel) in Baltimore, appeals from a directed verdict granted at the conclusion of her case by the Superior Court of Baltimore City (Mace, J.) in favor of the defendants and appellees, the Sentinel Auto Parks Company (Sentinel) and the Airport Parking Company of America. The Sheraton Hotel Corporation was joined as a beneficial plaintiff in the appellant's suit as a subrogee under a Workmen's Compensation insurance policy.

The appellant sustained the injuries of which she complains on the night of December 29, 1966, while walking to her place of employment, the Hotel. The Hotel was located on the southeast corner of Charles and Chase

Streets in Baltimore City, and lying immediately to the south of the Hotel on Charles Street there was an entrance to the appellees' parking lot. The Hotel required Mrs. Gray to enter the establishment through the employees' entrance located near the southeast corner of the building. When approaching the Hotel in a northerly direction on Charles Street, one could reach the employees' entrance by continuing north on Charles Street, turning right on Chase Street, and then turning right again on Lovegrove Street, a fifteen foot wide alley which bounded the Hotel on its east side. One could also reach the employees' entrance from Charles Street, however, in a considerably shorter period of time, by walking through the appellees' lot directly to the Hotel's southeast corner. On the night in question, Mrs. Gray unfortunately chose the shorter route, and while crossing the lot, slipped on a thin sheet of ice which caused her to fracture her left ankle.

Sentinel had executed a lease for the parking lot with the Hotel's owner, the Sheraton Hotel Corporation, on December 20, 1965, and from that time until the eventual demise of the Hotel, the appellees catered primarily to their landlord's patrons and employees. At the Charles Street entrance to the lot stood a sign reading "Parking-Sheraton Belvedere." Mrs. Gray testified that on numerous occasions when she rode to work in a friend's automobile, they would park in the lot and cross it to the employees' entrance, and that on other occasions, when she was relegated to riding a bus to work, she would depart from the bus at a stop south of the lot on Charles Street, walk up to the lot and cross through it. Although a stipulated exhibit containing the statement of the parking lot manager to the effect that, "She [Mrs. Gray] did not park in the lot [and] as far as the lot is concerned, she is considered a trespasser," was entered into the record by Mrs. Gray, nonetheless, she testified that the lot attendants never objected to her crossing the lot, even when she did not park there. Evidence was also presented in the court below to show that crossing the ap-

pellees' lot was the only safe method of reaching the employees' entrance, as Lovegrove Street had no sidewalks, was narrow and dimly lit, and was used by the parking lot attendants to move cars from one part of the lot to another.

Mrs. Gray filed her initial declaration and election of jury trial in the Superior Court of Baltimore City on May 8, 1967. The appellees' demurrer to the declaration, however, was sustained by Judge Sklar with leave to amend. The appellant amended its declaration to which the appellees again demurred. After a hearing, the second demurrer was overruled, this time by Judge Cardin who in his written opinion stated:

> "For the purposes of this demurrer, the entire issue rests on a determination of whether the plaintiff should be considered an invitee or a licensee. * * *
>
> "* * * It is the opinion of this Court that, at this stage of the proceeding, the plaintiff may, via custom and usage, be considered an invitee. * * *"

The case came to trial on its merits before a jury on June 7, 1971, at which time Judge Mace, in granting the appellees' motion for a directed verdict, stated:

> "Well I think you have got a situation that is peculiar in several respects, and I certainly sympathize with Mrs. Gray, but I do not think I am in a position to go so far as to hold that she was an invitee in this case. * * *"

The appellant disputes the holding of Judge Mace and contends that either because of the general design of the Hotel complex or because of her customary use of the lot to reach the employees' entrance, she should be considered an invitee on the appellees' premises.

The standard of care owed by a property owner to an invitee was once again stated by this Court in the recent

decision of *Bramble v. Thompson,* 264 Md. 518, 287 A. 2d 265 (1972) as:

> "* * * reasonable and ordinary care to keep his premises safe for the invitee and to protect the invitee from injury caused by an unreasonable risk which the invitee, by exercising ordinary care for his own safety, will not discover. * * *"

See also *Lloyd v. Bowles,* 260 Md. 568, 572, 273 A. 2d 193 (1971); *Gast, Inc. v. Kitchner,* 247 Md. 677, 682, 234 A. 2d 127 (1967); *Honolulu Ltd. v. Cain,* 244 Md. 590, 595, 224 A. 2d 433 (1966); *Morrison v. Suburban Trust Co.,* 213 Md. 64, 68, 69, 130 A. 2d 915 (1957); *Peregoy v. Western Maryland R. R. Co.,* 202 Md. 203, 207, 95 A. 2d 867 (1953). For the reasons we will discuss in this opinion we do not agree with the appellant's contention that she was an invitee upon the appellee's property.

Mrs. Gray maintains that the Hotel complex was designed in such a fashion as to constitute both an express and an implied invitation to enter the Hotel by crossing the appellee's lot. Evidence of the fact that the parking lot was a functioning part of the Hotel complex is cited in the appellant's brief as:

> "* * * The sign on it [the lot] read: 'Parking —Sheraton Belvedere'. lt [the lot] was owned and leased by the Hotel to the Defendants [appellees] to be operated in conjunction with and provide a necessary part of the services of the overall Hotel complex. There was obvious mutual economic benefit between the Defendants and the Hotel, each depended on the operation of the other, as well as a percentage sharing of profits from the parking lot over certain amounts."

Because of the close relationship between the Hotel and the parking lot, the appellant argues that a "reasonable

person" would believe that there existed an invitation to cross the lot, when entering the Hotel.

We first take up the appellant's contention that an express invitation existed for her to cross the parking lot. In this regard the appellant places much importance upon the fact that the parking lot sign stated "Parking —Sheraton Belvedere" and that this connoted that the public as well as the employees of the Hotel had a right to cross the premises going to the Hotel.

The appellant, however, admits in her testimony that upon the occasions when a fellow employee drove her to work and they parked on the lot that she paid the parking fee. Thus, this knowledge and indeed the very wording of the sign would lead the reasonable pedestrian to assume that the opposite of an express invitation to use the lot existed; that is, that the use of the lot was prohibited without having first parked an automobile there.

We next consider the appellant's primary argument that an implied invitation had been extended to her to use the parking lot. In advancing this contention she relies upon *Crown Cork and Seal Company v. Kane*, 213 Md. 152, 131 A. 2d 470 (1957), in which Judge Henderson, later Chief Judge, commented at some length on what he characterized as the more recent theory, namely, the implied invitation doctrine, as distinguished from the older theory, namely, the mutual benefit doctrine, under which concept, the courts endeavored to find some benefit to both the party who controlled the premises and the person on the premises, arising from the latter's use of it. The opinion states:

> "* * * But there is another theory of liability for negligence that does not depend on mutual benefit at all. The cases all recognize that an invitation may be express or implied, and there are many cases in which an invitation has been implied from circumstances, such as custom, the acquiescence of the owner in habitual use, the

apparent holding out of premises to a particular use by the public, or simply in the general arrangement or design of the premises." 213 Md. at 159.

After noting that the mutual benefit theory rests primarily upon subjective intent of the plaintiff invitee, whereas, the implied invitation theory "is objective in that it stresses custom and the appearance of things," the Court in *Kane* observed:

"The theory of implied invitation has been recognized in a number of Maryland cases, although they have been rested, in whole or in part, upon circumstances indicating at least some economic benefit. * * *." 213 Md. 159, 160.

In *Kane,* the Court finally concluded that the issue of whether or not the plaintiff was an invitee or a licensee was, on the facts of that case, a question for the jury because there was evidence, if believed by the jury, from which it could conclude that an implied invitation was extended to the plaintiff to use the smoking room, reserved for the defendant's employees, while he was waiting for the truck he was driving to be loaded at the defendant's loading dock. The plaintiff was injured while returning from the smoking room. It is interesting to note, that while the Court did not predicate its ruling on the mutual benefit theory but rather stressed the implied invitation theory, nonetheless, the opinion comments that, "it is a not unreasonable inference that it was to the company's interest to have waiting visitors use the cellar [smoking room], where they would not be in the way of other employees, and would not be tempted to smoke in forbidden areas." 213 Md. at 158. In the case at bar, while its absence does not affect the reasoning on which our decision is based, yet, we would observe that there was no benefit derived by the defendants in this case from the appellant's use of the premises.

Assuming, *arguendo,* that the record establishes a situation in which the design of the Hotel complex impliedly invited the appellant to cross the parking lot, we fail to see how Mrs. Gray would become the invitee of the appellees. The appellees were simply the lessees of the parking lot area under a commonplace commercial percentage lease, and the record is devoid of any facts to support the conclusion that the appellees had any control over the design of the Hotel complex, including the location of the employees' entrance. In short if the implied invitation existed, it did not stem from the appellees. Mrs. Gray as authority for her position relies primarily on *Hutzler Bros. v. Taylor,* 247 Md. 228, 230 A. 2d 663 (1967) ; *Crown Cork & Seal Co. v. Kane,* 213 Md. 152, 131 A. 2d 470 (1955) ; *Burke v. Md., Del. & Va. R. Co.,* 134 Md. 156, 106 A. 353 (1919) ; *Elkton Auto Sales Corp. v. Ferry,* 53 F. 2d 8 (4th Cir. 1931) ; *Tschumy v. Brooks' Market,* 140 P. 2d 431 (Cal. 1943) and *Evans v. Sears, Roebuck & Co.,* 104 S. W. 2d 1035 (Mo. 1937). All of these cases, however, share one common fact which distinguishes them from the case at bar. In each instance they involve party defendants who owned and controlled the design and use of both the parking lots or the premises on which the accidents occurred, as well as the business adjacent thereto by which the injured party was impliedly invited on the premises. In the case at bar we find no such joint management or control.

Mrs. Gray would add yet another string to her bow, contending that because of her customary use of the parking lot to gain entrance to the Hotel, even when she did not park there, the appellees acquiesced in her use of the lot and she should therefore be accorded the legal protection given invitees. This contention was well answered by·Judge Hammond (now Chief Judge) for the court in *Carroll v. Spencer,* 204 Md. 387, 104 A. 2d 628 (1954). In *Carroll,* an 8 year old boy travelling home from school with some of his playmates fell through a hole in the floor of a partially built house which the youths had entered. The record showed that prior to entering the

house the boy saw the job foreman and called out to him. The foreman looked at the boys, but did not answer. There was additional evidence that the foreman later witnessed the boys playing inside the house, but did not object. Upon this statement of facts, the Court held:

"* * * The status of the children would not change to that of invitees because the appellees, through their foreman, knew that intruders were on the property and in a position of potential danger by virtue of the unfinished condition of the house, and did not drive them off. Acquiescence is not invitation, and at most, changes the status of the trespasser to that of bare licensee, to whom the owner owes no greater duty than to a trespasser. *Jackson v. Pennsylvania R. R.*, 176 Md. 1; *Benson v. Baltimore Traction Co., supra* [77 Md. 535, 26 A. 973] ; *State, Use of Lorenz v. Machen*, 164 Md. 579; and *Duff v. United States* (4th Cir.) 171 F. 2d 846." 204 Md. at 393.

See also *Hicks v. Hitaffer*, 256 Md. 659, 668, 261 A. 2d 769 (1970) ; *Crown Cork and Seal Co. v. Kane, supra*, at 157; and see in particular *Jackson v. Pennsylvania R. R. Co.*, 176 Md. 1, 9, 3 A. 2d 719 (1939), wherein the appellant was classified as, "* * * at most a bare licensee * * *," notwithstanding the facts that he, and the public generally, habitually used the portion of the appellee's railroad tracks upon which the appellant was injured and the Railroad Company never objected to this use. As a bare licensee, Mrs. Gray was not owed the duty by the appellees to keep the premises safe (*Carroll, supra*, at 394) and, in the absence of entrapment, was owed no duty by the appellees other than to refrain from wanton and wilful injury. *Bramble v. Thompson, supra; Hicks v. Hitaffer, supra*, at 667; *Peregoy v. Western Maryland R. R. Co., supra*, at 207; *Myszkiewicz v. Lord Baltimore Filling Stations*, 168 Md. 642, 646, 178 A. 856 (1935).

Finally, the appellant insists that the lower court erred in not allowing the jury to decide whether or not she was an invitee on the appellees' premises, as was done in *Crown Cork and Seal Co. v. Kane, supra,* and *Burke v. Md., Del. & Va. R. Co., supra.* The simple answer to this proposition is that there was not legally sufficient evidence in this case bearing on the issue of the invitee status of the appellant to warrant its submission to the jury, the trial judge concluding, and rightfully so, that the best interpretation of the facts that could be given the appellant was that she was a bare licensee. Cf. *Baltimore & Ohio R. Co. v. Walsh,* 142 Md. 230, 242, 245, 120 A. 715 (1923).

There being no duty on the part of the appellees to keep their premises safe for the appellant, the trial court properly withdrew the case from the jury. It would appear that throughout this case the appellant has confused implied permission with implied invitation; unfortunately for her, they are not the same.

*Judgment affirmed, appellant to pay costs.*